# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:14CR00001 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CECIL A. McCONNELL, JR.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Following his conviction by a jury, defendant Cecil A. McConnell, Jr., seeks a new trial based upon a subsequent decision by the Supreme Court, *McFadden v. United States*, 135 S. Ct. 2298 (2015), construing the mens rea requirement under the Controlled Substance Analogue Enforcement Act of 1986 ("CSAEA"), 21 U.S.C. §§ 802(32), 813. The Supreme Court's decision reversed a ruling on this issue by the Fourth Circuit, *United States v. McFadden,* 753 F.3d 432 (4th Cir. 2014), upon which this court had relied in certain evidentiary rulings and jury instructions in McConnell's case. McConnell also moves for a judgment of acquittal or a new trial on his separate conviction for fraudulently misbranding drugs in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 331(a), 333(a)(2).

For the following reasons, I will grant McConnell's motion for a new trial on his CSAEA convictions, and deny the motion for judgment of acquittal or a new trial as to his FDCA conviction.

I.

On February 25, 2014, McConnell was indicted along with eight codefendants for conspiring to possess and distribute synthetic marijuana in violation of the CSAEA, and other related offenses.[1]  On October 22, 2014, after a seven-day jury trial, McConnell was convicted of conspiracy to possess with the intent to distribute controlled substance analogues (Count One), possession with the intent to distribute controlled substance analogues 5F-PB-22 and XLR-11 (Counts Five and Six), maintaining a place for the purpose of distributing controlled substance analogues (Count Ten),  and misbranding a drug with the intent to defraud or mislead (Count Sixteen).[2]  Following the verdict, McConnell and his codefendant Stephens timely moved for a new trial on a *Brady* issue,[3] which motion was denied.  *United States v. Stephens*, No. 2:14CR00001, 2014 WL 6902053 (W.D. Va. Dec. 8, 2014).

---

[1]  All but two of the defendants, McConnell and Douglas Eugene Stephens, pleaded guilty prior to trial.

[2]  McConnell was acquitted on the charge of selling or offering for sale drug paraphernalia (Count Twenty-Two).

[3]  *Brady v. Maryland,* 373 U.S. 83 (1963).

Case 2:14-cr-00001-JPJ-PMS   Document 549   Filed 08/03/15   Page 2 of 22   Pageid#: 4691

On May 7, 2015, the date fixed for his sentencing, McConnell moved pursuant to Federal Rule of Criminal Procedure 45(b) for an extension of time to file a motion for a new trial in light of the Supreme Court's soon-to-be-expected *McFadden* mens rea decision. I granted McConnell's motion on the ground that McConnell's failure to timely move for a new trial on this ground constituted excusable neglect. *United States v. McConnell*, No. 2:14CR00001-009, 2015 WL 2365628 (W.D. Va. May 18, 2015); *see* Fed. R. Crim. P. 45(b)(1)(B).

Soon thereafter, on July 1, 2015, following the Supreme Court's June 18, 2015, decision in *McFadden*, McConnell filed his present Motion for New Trial. The motion has been fully briefed and is ripe for decision.[4]

## II.

Federal Rule of Criminal Procedure 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Courts have "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). Moreover, "any error of sufficient magnitude to require reversal on appeal is an adequate

---

[4] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

Case 2:14-cr-00001-JPJ-PMS   Document 549   Filed 08/03/15   Page 3 of 22   Pageid#: 4692

ground for granting a new trial." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (quoting 3 Charles Alan Wright et al., *Federal Practice and Procedure* § 556 (3d ed. 2004)).

The court's charge to the jury in this case as to the appropriate mens rea relating to the CSAEA counts was required by the Fourth Circuit's decision in *United States v. McFadden*, which held that the "intent element [under the CSAEA] requires that the government prove that the defendant meant for the substance at issue to be consumed by humans." 753 F.3d at 441.

McConnell contested the mens rea issue pretrial, pointing to other circuits that have interpreted the CSAEA to require the government to prove that the defendant knew that the substances he was selling had chemical structures and effects similar to controlled substances. *See, e.g.*, *United States v. Turcotte*, 405 F.3d 515, 527 (7th Cir. 2005). The Fourth Circuit in *McFadden*, however, rejected the "strict knowledge requirement" imposed in *Turcotte*, and held that the CSAEA "may be applied to a defendant who lacks actual notice that the substance at issue could be a controlled substance analogue." *McFadden,* 753 F.3d at 444. A petition for certiorari to the Supreme Court in the *McFadden* case, based on this circuit split, was filed October 2, 2014. In the meantime, this court was bound by the Fourth Circuit's decision.

The Fourth Circuit's *McFadden* ruling affected the proceedings in this case in several ways. First, under *McFadden*'s precedent, I granted the government's motions in limine to exclude the defendant's evidence showing that he did not know that the substances he sold were controlled substance analogues or that it was illegal to distribute them from the retail outlet where he worked, Cecil's Variety Store. *United States v. Hoyt*, No. 2:14CR00001, 2014 WL 5023093, at *7 (W.D. Va. Oct. 8, 2014). This excluded evidence included information provided to the defendant from vendors claiming that the products were legal substances. Further, the defense would have presented a video recording of a controlled buy in which the defendant told a confidential informant that the products were legal in every state.

I reasoned that to prove a violation of the CSAEA, the government did not need to show that the defendants had "actual notice that the substances at issue were controlled substance analogues." *Id.* Therefore, any evidence from the defendants that they lacked knowledge as to the statutory elements, apart from intending that the substance be consumed by humans, was irrelevant and inadmissible at trial. *Id.* at *6-7.

In addition, I excluded evidence relating to the government's failure to notify the defendants that they were violating the CSAEA, in spite of cease-and-desist letters sent to other retailers in this district for selling the same substances.

Citing *McFadden*, I noted that any argument that the defendant reasonably believed that the substances were legal would flout the principle that ignorance of the law is no excuse. *Id.* at *7.

Finally, the *McFadden* decision informed this court's jury instructions as to the mens rea element of the CSAEA charges. Of relevance, the court gave the following instructions to the jury:

> Under federal law, a controlled substance analogue is to be treated the same as a controlled substance if it is intended for human consumption. Therefore, in addition to the above definition, the government must also prove beyond a reasonable doubt that a defendant intended for the substance to be consumed by humans. Human consumption means the introduction into the body of a person by whatever means, including but not limited to smoking.
>
> . . . .
>
> It is not necessary for the government to prove that a defendant knew that the charged substances were controlled substance analogues. Rather the government is required to prove beyond a reasonable doubt that the substances did in fact meet the definition of a controlled substance analogue and that the defendant intended that these substances be consumed by humans.

(Instruction No. 16, ECF No. 320.)

Based on the evidence and instructions at trial, the jury found McConnell guilty of the multiple offenses related to distribution of controlled substance analogues, as well as misbranding a drug with the intent to defraud or mislead. Each charge of conviction under the CSAEA contained a mens rea element

Case 2:14-cr-00001-JPJ-PMS   Document 549   Filed 08/03/15   Page 6 of 22   Pageid#: 4695

dictated by the *McFadden* decision, and thus required the jury to find only that the defendants intended that the substances at issue were consumed by humans.

In its *McFadden* decision, the Supreme Court reversed the Fourth Circuit and held that, in order to prove a CSAEA violation, the government must show that defendant knew he was dealing with a "controlled substance." *McFadden*, 135 S. Ct. at 2302. The Court noted that "[t]he Analogue Act requires a controlled substance analogue, if intended for human consumption, to be treated 'as a controlled substance in schedule I' for purposes of federal law." *Id.* at 2303 (quoting 21 U.S.C. § 813). Thus, the Court looked to the mens rea requirement of the Controlled Substances Act ("CSA"), which makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *Id.* (quoting 21 U.S.C. § 841(a)(1)). Because the CSAEA requires controlled substance analogues to be treated as controlled substances, the Court concluded that pursuant to Section 841, "the Government must prove that a defendant knew that the substance with which he was dealing was 'a controlled substance,' even in prosecutions involving an analogue." *Id.* at 2305.

Regarding the knowledge requirement, the Court further clarified that, under § 841, a defendant need know "only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules." *Id.* at 2304. The

Court specified that the knowledge requirement may be established in two ways. First, knowledge "can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance — that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act — regardless of whether he knew the particular identity of the substance." *Id.* at 2305. Second, knowledge can be established "by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." *Id.* In this regard, the government may show that the defendant knew that the substance had a chemical structure "'substantially similar to the chemical structure of a controlled substance in schedule I or II'"; "which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" the effect of a controlled substance; or that the defendant represented or intended the substance to have that effect with respect to a particular person. *Id.* (quoting § 802(32)(A)). The Court emphasized that "[a] defendant who possesses a substance with knowledge of those features knows all of the facts that make his conduct illegal, just as a defendant who knows he possesses heroin knows all of the facts that make his conduct illegal. A defendant need not know of the existence of the Analogue Act to know that he was dealing with 'a controlled substance.'" *Id.*

The Court concluded that the Fourth Circuit's interpretation that the only required mens rea was that the analogue substances be intended for human consumption, was "inconsistent with the text and structure of the statutes." *Id.* at 2306. The Court vacated the Fourth Circuit's judgment and remanded the case for the court to consider whether the error was harmless. *Id.* at 2307 (citing *Neder v. United States*, 527 U.S. 1, 15 (1999)).

In light of the Supreme Court's ruling, there is no question that this court's decision to exclude evidence regarding McConnell's lack of knowledge of the substances' regulated status, and its jury instructions on the mens rea element — each of which explicitly relied on the Fourth Circuit's reasoning in *McFadden* — were in error. Further, it was error for the court to exclude the cease-and-desist letters sent by the United States Attorney's Office to other retailers in this district. Although ignorance of the law is typically no excuse to criminal prosecution, "when 'there is a legal element in the definition of the offense,' a person's lack of knowledge regarding that element *can* be a defense." *McFadden*, 135 S. Ct. at 2308 (Roberts, C.J., concurring) (quoting *Liparota v. United States*, 471 U.S. 419, 425 n.9 (1985)). Since "there is arguably a legal element in Section 841(a)(1) — that the substance be 'controlled,'" the letters are relevant to the defendant's knowledge of that legal element. *McFadden*, 135 S. Ct. at 2308.

The government contends, however, that any such errors were harmless. *See* Fed. R. Crim. P. 52(a). An error is harmless where "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder*, 527 U.S. at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The court must conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Weaver*, 282 F.3d 302, 314 (4th Cir. 2002) (internal quotation marks and citations omitted).

The government argues that no rational jury could have concluded that McConnell did not know he was distributing controlled substances, and in particular that McConnell knew that the substances were used to experience a "high" similar to marijuana. In support of its argument, the government points to a video of a controlled buy, in which McConnell told the purchaser to "sit[] down" and "not drive" while using the substance, evidence that the defendant attempted to conceal his wrongdoing by fraudulently labeling his products as incense or potpourri and falsely claiming they were not for human consumption, and price discrepancies between his merchandise and legitimate incense and potpourri.

While the government's evidence supports its position that McConnell knew the substances were controlled, there is also, as pointed out by the defendant, evidence to the contrary — evidence which was excluded by this court in

accordance with then-existing Fourth Circuit law. Such conflicting evidence raises the question of McConnell's credibility, a determination that is uniquely within the province of the jury as finder of fact. *See United States v. Bonsu*, 291 F. App'x 505, 510 (4th Cir. 2008) (unpublished) ("The jury is the finder of fact in a trial and properly judges all credibility issues.") It certainly is not clear beyond a reasonable doubt that the court's evidentiary rulings and jury instructions — now erroneous in light of the Supreme Court decision — did not influence the jury's guilty verdict. *Neder*, 527 U.S. at 15. Therefore, the error was not harmless, and McConnell is entitled to a new trial on these charges.

## III.

McConnell also moves for a judgment of acquittal, or in the alternative a new trial, as to his conviction for misbranding a drug in interstate commerce in violation of the FDCA. In support of his motions, McConnell contends that his FDCA conviction was not supported by sufficient evidence, and that it was tainted by the court's erroneous rulings on the CSAEA counts.

As an initial matter, this court lacks the authority to issue a judgment of acquittal at this stage in the proceedings. Under Federal Rule of Criminal Procedure 29, the defendant must move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict. Fed. R. Crim. P. 29(c)(1). Until the present motion, McConnell has not previously moved for a judgment of acquittal

on the grounds asserted here, i.e., that he did not know or intend that the product was being used as a drug or that the packaging was intended to defraud consumers.

Rule 45(b)(1)(B) permits the court to extend the time for filing a motion "on its own," or "for good cause" on a party's motion "after the time expires if the party failed to act because of excusable neglect." *See* Fed. R. Crim. P. 45(b)(1)(B) advisory committee's note to 2005 amendment (extending Rule 45(b) provisions to untimely Rule 29 motion if "the failure to file it on time was the result of excusable neglect").

Although McConnell now asserts he is entitled to a judgment of acquittal on the FDCA count, he did not previously move for an extension of time to file such a motion pursuant to Rule 45(b).[5]  Although Rule 45(b)(1) provides the court authority to grant such a motion "on its own," there has been no showing that the defendant's failure to file a timely motion was the result of excusable neglect.  To the contrary, this court had already granted the defendant's motion for an extension of time to file a Rule 33 Motion for New Trial, on the basis that there was an intervening significant change in law that the defendant could not have anticipated. Despite that McConnell was on notice of the Supreme Court's *McFadden* decision

---

[5]  McConnell points to the recent judgment of acquittal of Chol Makuach Dau, a defendant who was convicted of violating the CSAEA in this district, in support of his motion for acquittal on the FDCA charge.  Unlike this case, however, in Dau's case the government moved for judgment of acquittal of Dau following the Supreme Court's decision in *McFadden*.  *United States v. Dau*, No. 7:13-CR-00082, ECF No. 251 (W.D. Va. July 1, 2015).

and had all the information pertinent to his Rule 33 motion, he did not simultaneously move for an extension of time to file a Rule 29 motion for acquittal on similar legal grounds. Therefore, McConnell's failure to request an extension at that time reflects a lack of diligence, and does not support a finding of excusable neglect. *See Martinez v. United States*, 578 F. App'x 192, 194 (4th Cir. 2014) (unpublished) ("[A] party that fails to act with diligence will be unable to establish that [his] conduct constituted excusable neglect." (quoting *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 413 (4th Cir. 2010)).

Nevertheless, even if the court were to consider the defendant's motion for acquittal on the merits, the motion would not be granted. Count 16 of the Indictment alleged that McConnell "caused the introduction or delivery for introduction into interstate commerce a misbranded drug," namely the synthetic cannabinoids he was selling. The Indictment alleged that the drugs were "misbranded" in that they failed to state the name of the manufacturer, packer or distributor in violation of 21 U.S.C. § 352(b)(1); that the label failed to contain an accurate statement of the quantity of the contents or the active ingredients in violation of 21 U.S.C. §§ 352(f) and 352(e)(1)(A)(ii); that the label bore false and misleading labeling in violation of 21 U.S.C. § 352(a); and that the labeling did not bear adequate directions for use in violation of 21 U.S.C. § 352(f).

At trial, the evidence presented focused mainly on whether the labels at issue were false and misleading in violation of § 352(a). The defendant's merchandise was marketed as "incense" or "potpourri," and the labels stated that it was "not for human consumption." At trial, McConnell contended that his understanding of the merchandise was consistent with its labeling — that it was really a form of incense or potpourri, and was not intended to be smoked. The government presented evidence, however, that McConnell knew he was selling plant materials laced with chemicals that were intended to be smoked in order for the user to experience a "high" similar to marijuana. As previously explained, the government's evidence included a video of a controlled purchase in which McConnell recommended that the purchaser be "sitting down" and "not drive" while using the substance, the testimony of several witnesses that they did in fact purchase the merchandise for the purpose of smoking it, and a comparison of the prices for the defendant's products versus legitimate incense and potpourri, among other evidence.

As to the FDCA charge, the court provided the jury with the following instructions:

> Count Sixteen of the Indictment charges that on or about and between January 1, 2012 and February 25, 2014, defendants Douglas Stephens and Cecil A. McConnell Jr., as principals or aiders and abettors, with the intent to defraud and mislead, caused the introduction into interstate commerce a misbranded drug in violation of federal law. For you to find the defendant guilty, the government must prove each of the following elements beyond a reasonable doubt:

-14-

ONE: that on or about the dates charged, the defendant introduced or delivered for the introduction into interstate commerce a "drug" as defined by the Federal Food, Drug and Cosmetic Act;

TWO: that the drug was a synthetic cannabinoid compound and had one of the following chemical structures: (i) UR-144; (ii) XLR-11; or (iii) 5F-PB-22;

THREE: that the drug was not properly labeled because the labeling was deficient in one of the following respects:

(i) it failed to state the name and place of business of the manufacturer, packer or distributor; or

(ii) it failed to contain an accurate statement of the quantity of the contents in terms of weight, measure or numerical count; or

(iii) it failed to establish name and quantity of each active ingredient; or

(iv) it was false and misleading; or

(v) it did not bear adequate directions for use;

FOUR: that the defendant did so with intent to defraud or mislead either the government or consumers of the product; and

FIVE: that the misrepresentations or omissions were material.

(Instruction No. 22, ECF No. 320.)

McConnell argues that there was insufficient evidence to support the FDCA charge. In reviewing his claims, the court must take the evidence and its reasonable inferences in the light most favorable to the government, and determine "whether after viewing the evidence in the light most favorable to the prosecution,

-15-

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted).

McConnell first argues that the only transactions presented at trial involving products that were laboratory tested and verified to be "drugs" were the two controlled sales to Virginia residents — a law enforcement officer and a confidential informant. McConnell therefore contends that, since the transactions took place in Virginia between Virginia residents, the government did not show that the substances had moved in interstate commerce, as required by the statute.

McConnell's argument fails because he takes an unduly narrow view of the sales at issue. The FDCA prohibits "not only the introduction into interstate commerce of adulterated articles but also the delivery thereof for introduction into commerce." *United States v. Sanders*, 196 F.2d 895, 898 (10th Cir. 1952). In other words, "where one purchases goods in one state for transportation to another the interstate commerce transaction includes the purchase as well as the transportation." *Id.*; *see also United States v. Tuente Livestock*, 888 F. Supp. 1416, 1427 (S.D. Ohio 1995) (stating that "Congress has directly indicated that a party who has purchased an adulterated article from another party and who, in turn, passes it on to another," may be deemed to have introduced products into interstate commerce). Here, it is undisputed that the products in Cecil's Variety Store were

purchased from out-of-state vendors, including from McConnell's codefendant Emmanuel Vestal, who resided in Florida. Therefore, the evidence overwhelmingly supports the notion that McConnell "introduced" the products into interstate commerce.

Further, McConnell argues that, even assuming he knew he was actually selling drugs and not incense, the government did not prove that anyone was actually defrauded, since the product's purchasers were aware the substances were actually drugs and in fact bought them for that purpose. It is not necessary under the statute, however, that the government prove that anyone was actually misled or defrauded — only that the defendant acted with the intent to defraud or mislead. *See United States v. Ellis*, 326 F.3d 550, 556-57 (4th Cir. 2003) (upholding trial court's jury instructions that "[i]t is not necessary, however, to prove that anyone was, in fact, defrauded, as long as it is established beyond a reasonable doubt that the defendant acted with the intent to defraud or mislead," and that "[i]t is not necessary, however, to prove that anyone was, in fact, misled, as long as it is established beyond a reasonable doubt that the defendant acted with the intent to mislead"). In fact, McConnell himself requested jury instructions which stated that "[i]t is not necessary for the government to prove, however, that the act or omission actually influenced or mislead [sic]," and that "[i]t is not necessary, however, to prove that any one was, in fact defrauded, as long as it is established

that the defendant acted with the intent to defraud or mislead." (Def.'s Proposed Jury Instructions No. 6, ECF No. 248.) Therefore, even if the jury instruction was somehow erroneous, "[a] defendant in a criminal case cannot complain of error which he himself has invited." *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) (quoting *Shields v. United States*, 273 U.S. 583, 586 (1927)).

In sum, procedural hurdles prevent this court from entering a judgment of acquittal, and in any event, the motion lacks merit.

IV.

Finally, McConnell moves in the alternative for a new trial on the FDCA count. First, McConnell argues that this court's exclusion of laboratory reports showing that the products tested negative for certain cannabinoids prejudiced him as to the FDCA count, because these reports would have shown that the products were not cannabinoids and did not meet the definition of a drug under the FDCA. Second, McConnell contends that the court's exclusion of laboratory reports and related testimony tainted the jury's determination that McConnell acted with intent to defraud or mislead under 21 U.S.C. § 333(a)(2), because these reports supported his theory of the case that he did not know that the incense was actually a drug.

McConnell's argument confuses the issues. The FDCA defines a drug as "articles (other than food) intended to affect the structure or any function of the body of man." 21 U.S.C. § 321(g)(1). In this regard, a drug does not include

-18-

products that are not intended for human consumption, since a product that is not to be consumed by definition cannot affect the structure or function of the human body. Therefore, the real question as to whether the substances were "drugs" under the FDCA is not whether these substances were chemically identical to the tested cannabinoid compounds, or even whether they were analogue substances under the CSAEA. Rather, the issue is whether the substances affected the structure or function of the human body, because they were intended to be consumed. The lab reports are not probative of this issue, but merely show that the substances did not match certain tested cannabinoids.

For similar reasons, the laboratory reports are not probative of the scienter requirement that the defendant had intent to defraud or mislead. At trial, the government presented a plethora of evidence that McConnell knew that the substances were being ingested in order to make the user experience a "high." While that evidence in itself is not dispositive on the issue of whether McConnell knew the substances were "controlled," the evidence overwhelmingly showed that McConnell knew that the substances were being used for human consumption, despite the fact that his products were being marketed as "incense" or "potpourri" and labeled "not for human consumption." *See, e.g., United States v. Niemoeller,* No. IP02-0009-CR-01-H/F, 2004 WL 1179446, at *2 (S.D. Ind. May 17, 2004) (upholding FDCA conviction in case where defendant had labeled drugs as non-

consumables in order to avoid federal drug laws because the proof of intended consumption stem[med] from the entire method of doing business, including defendant's above-market prices, his disingenuous disclaimer, [and] the lack of other apparent uses for the products defendant sold, among other facts).

Liability under § 333(a)(2) may be premised on either an intent to mislead or defraud natural persons or government agencies. *United States v. Mitcheltree*, 940 F.2d 1329, 1347 (10th Cir. 1991). The evidence at trial showed that McConnell knew that the products were being sold "without warning or accurate explanation" as to their true effects to potentially unwitting consumers. *Id.* at 1346. Moreover, even if McConnell is correct that he did not consciously mislead consumers, who apparently knowingly purchased the "potpourri" in order to consume it, his conduct was undoubtedly designed "to mislead drug regulatory authorities such as the FDA or a similar governmental agency." *Id.* at 1347; *see also Ellis*, 326 F.3d at 554 ("The inquiry, therefore, is whether the defendant designed his conduct to avoid the regulatory scrutiny of the FDA.").[6] In short, the evidence

---

[6] In support of his argument that he lacked the requisite intent, McConnell points to the Tenth Circuit's reversal of a FDCA conviction on the basis that there was insufficient evidence to show that distributors of the illicit drug MDMA or "ecstasy" had consciously intended to defraud or mislead government agencies, where the drugs were insufficiently labeled. *See Mitcheltree,* 940 F.2d at 1345, 1351-52. However, the facts of that case are distinguishable, as there was no evidence that the defendants in that case "knowingly misbranded [the drugs] with the specific intent to mislead or defraud" local police departments. *Id.* at 1351. It was not enough merely to show that the defendants were selling drugs, as "covert criminal activity involving drugs is not synonymous with misbranding with an intent to mislead or defraud." *Id.* at 1352.

Case 2:14-cr-00001-JPJ-PMS   Document 549   Filed 08/03/15   Page 20 of 22   Pageid#: 4709

overwhelmingly showed that McConnell acted with intent to defraud or mislead, and the jury so concluded in finding him guilty on the FDCA count.

The laboratory reports that were sought to be admitted by the defendant do not cast doubt on this conclusion. To the contrary, the reports strengthen the inference of fraud by showing that McConnell relied on laboratory testing that compared the chemical structures of the substances and listed cannabinoids. Such lab tests would hardly be relevant or necessary if McConnell truly believed he was merely selling incense; rather, they show that McConnell was aware the substances were intended for human consumption. It defies common sense to believe that McConnell would have relied on these reports to somehow prove that the products were actually incense or potpourri, and no rational juror would so find.

In sum, there was no error as to McConnell's FDCA conviction, much less prejudicial error, and McConnell is thus not entitled to a new trial.

---

The facts of this case are strikingly different. Unlike the defendants in *Mitcheltree*, McConnell was not merely engaged in covert illicit activity, but allegedly consciously sold mislabeled substances in order to misrepresent that the drugs were not actually intended for human consumption. *See Niemoeller*, 2004 WL 1179446, at *2 (concluding in FDCA cause that "[t]he jury could reasonably conclude that the defendant was operating his entire business on the palpable fiction that buyers were promising not to consume the substances for sale"). Therefore, the evidence supports the notion that McConnell was aware "of the essential nature of the alleged fraud," *United States v. Hiland*, 909 F.2d 1114, 1128 (8th Cir. 1990), and that he consciously intended to mislead or defraud government agencies.

IV.

For these reasons, the Motion for New Trial (ECF No. 531) is GRANTED as to Counts One, Five, Six and Ten of the Indictment.  The said motion is DENIED as to Count Sixteen of the Indictment.  The Clerk is directed to reset the case for jury trial within the Speedy Trial Act time of 70 days from this date.  *See* 18 U.S.C. § 3161(e).

It is so **ORDERED**.

ENTER:  August 3, 2015

/s/  James P. Jones
United States District Judge